**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| BRENDA TAITE, | : | |
| Plaintiff, | : | |
| vs. | : | CA 19-0212-TFM-MU |
| MONROE COUNTY PUBLIC LIBRARY, et al., | : | |
| | : | |
| Defendants. | | |

## <u>REPORT AND RECOMMENDATION</u>

This cause is before the Magistrate Judge for issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. GenLR 72(a)(2)(S), on Plaintiff's Amended Complaint (Doc. 4), the motion to dismiss filed by the Monroe County Commissioner, Commissioners Childs, Ghee, Morrow and McKissick, Judge Greg Norris, and Judge Sonya Stinson (Doc. 16; *see also* Doc. 17), Defendant James Steven Stacey's motion to dismiss (Doc. 21), the motion to dismiss filed by the Monroe County Public Library, the Monroe County Public Library Board of Trustees, Jerome Sanders, Ann Pridgen, Shannon Powell, and La Shannon Hollinger (Doc. 25), the Plaintiff's objections to each motion to dismiss (*see* Docs. 29, 30 & 33), and the movants' separate replies (Docs. 31, 32 & 34). Based on the contents of these and all other relevant pleadings in this matter, the Magistrate Judge **RECOMMENDS** that Plaintiff's complaint be **DISMISSED**, both with and without prejudice, for the reasons set forth below.

## PROCEDURAL BACKGROUND

On September 15, 2016, applications for an open position of Director of the Monroe County Public Library (that is, "librarian") were solicited by advertisement in the Monroe Journal. (*See* Doc. 4, Plaintiff's Amended Complaint, at ¶ 13). Plaintiff applied for that open position (*see id.*) and was granted an interview with the Monroe County Public Library Board of Trustees on October 17, 2016 (*see id.* at ¶¶ 24 & 26). The interview was scheduled for October 24, 2016 at 3:30 p.m. (*Id.* at ¶ 26). Plaintiff avers that she arrived for her interview on the designated date at 3:20 p.m. (*id.*) and at 3:30 was approached by the Chairperson of the Monroe County Public Library Board of Trustees, Ann Pridgen, and instructed to complete a writing sample exercise, a copy of which she received from Bev Colquett and completed by 4:00 p.m. (*see id.* at ¶¶ 28-31). After completing this exercise, Taite walked back toward the conference room for her interview but did not knock on the interview door because Mary Ann Harris' interview was still ongoing. (*See id.* at ¶¶ 32-33).[1] After Harris' interview was completed, Taite was interviewed; Plaintiff recalls hitting a proverbial home run with respect to the questions the library board interview panel—consisting of Pridgen, Steve Stacey, La Shannon Hollinger, and Shannon Powell—asked of her (some twelve in number) but that her questions to the panel were not adequately answered. (*See id.* at ¶¶ 34, 36-38 & 42).

Taite was not selected for the position for which she interviewed; she received a rejection letter from Pridgen dated October 28, 2016 "but postmarked October 27,

---

[1]     Taite's complaint describes Mary Ann Harris as a black employee with the Mobile County Public Library who was also asked to complete the writing exercise. (*See id.* at ¶¶ 21 & 28.)

2016." (*Id.* at ¶ 44). According to Taite, Crystal Reynolds was initially offered the position; however, once she declined the position, the Monroe County Library Board of Trustees ultimately hired Darlene Thompson.[2] (Doc. 4, at ¶¶ 45-46.) Taite filed a formal charge of discrimination with the EEOC against the Monroe County Library Board of Trustees on November 12, 2016, alleging retaliation, race discrimination, and age discrimination from September 15, 2016 through November 30, 2016. (*See* Doc. 1, Charge of Discrimination).[3] Though signed on November 12, 2016, Plaintiff's attached narrative contains the date November 3, 2016 and the following language: "After the EEOC served the Monroe County [Library] Board of Trustees with notice of my intent to file an EEOC charge of discrimination based on my race and age,[4] Board member,

---

[2]     Taite generally describes Reynolds and Thompson, along with Shannon Hall-Jones, as white women who were not "subjected to the same hiring requirements" as she. (*Id.* at ¶¶ 39-41 & 45-46.) In particular, Plaintiff avers that Reynolds, for example, "was not asked to submit to a timed writing sample prior to her interview, answer 16 questions in advance of the interview or 12 questions during the interview." (*Id.* at ¶ 41).

[3]     According to Plaintiff, Darlene Thompson resigned as librarian on April 12, 2019. (*Id.* at ¶ 48.) Given Plaintiff's various averments regarding Thompson, the ensuing paragraph, ¶ 49 (*see id.* ("Mary Ann Harris was fired from the library September 11, 2017, for filing an EEOC complaint and a white woman, Shannon Hall-Jones[,] with no former (sic) education and library experience[,] was given the position of librarian.")), makes no logical sense and has nothing to do with Plaintiff's claims.

[3]     The November 30, 2016 date is interesting, of course, because Taite actually filed her charge of discrimination on November 12, 2016.

[4]     Indeed, the EEOC sent the Monroe County Library Board of Trustees notice of Taite's intent to file a charge of discrimination—on account of race and age—on October 13, 2016, almost two weeks before she was interviewed for the director/librarian position. (*Compare* Doc. 21, Exhibit 1 *with* Doc. 29, Exhibit 11.) However, Taite did not send the EEOC a signed Charge of Discrimination until November 12, 2016, the deadline set by the EEOC by email dated October 26, 2016 (Doc. 29, Exhibit 11).

These citations to materials technically outside the pleading (and relevant documentation attached thereto) are made only because they relate to Plaintiff's charge of discrimination, which was attached to her original complaint filed in the United States District Court for the Northern District of New York. (*See* Doc. 1). However, the undersigned has (Continued)

3

Steve Stacey went to the Monroe Journal, a local newspaper[,] and informed them of my intent to file. The Monroe Journal then placed the information on the front page of the newspaper in an attempt to silence and intimidate all potential witnesses regarding my charge of race and age discrimination." (*See id.* (footnote added); *compare id. with* Doc. 4, at ¶¶ 50-51 (same) & ¶ 18 ("Steve Stacey also took my EEOC complaint to the Monroe Journal to be published[] so that he could intimidate witnesses to my complaint by placing the complaint on the front page of the Monroe Journal[,] a local newspaper.")).

Plaintiff appears to suggest that these actions by Steve Stacey, as well as additional similar actions by Stacey (*compare id. with id.* at ¶¶ 14-15 & 17 ("Steve Stacey published in the Monroe Journal that he was going to have me investigated for filing a complaint with the EEOC. [] Steve Stacey stated that he wrote to both Alabama Senators and asked them to intervene with the EEOC to prevent my complaint for race and retaliation against the Monroe County [Public Library] Board of Trustees which is appointed by the Monroe County Commissioners. . . . Steve Stacey also called into the radio station WPPG 101.1 FM [i]n Evergreen, Alabama and talked about my complaint with the EEOC.")), form the basis for her claim of retaliation (*compare id. with id.* at ¶ 13 ("I was retaliated against by Steve Stacey a Monroe County [Public Library] Board of Trustee Member.") & ¶ 52 ("I believe that I have been subjected to discrimination based on my race (Black) in violation of Title VII of the Civil Rights Act of 1964, as amended[,] and ***retaliated against  by James Steven Stacey for filing my EEOC complaint***."

considered no additional information/exhibits attached by Plaintiff to her various responses in opposition or to exhibits attached to various pleadings filed by the Defendants (*see* Doc. 17 & Doc. 21, Exhibits 3-4).

(emphasis supplied)). Taite also generally avers that "Steve Stacey wrote defamatory statements about [her] race and application for the position with the Monroe County [Library] Board of Trustees on his Facebook page and also referred to [her] race with a disparaging comment." (*Id.* at ¶ 16; *see also id.* at ¶¶ 22-23 ("James Steven Stacy currently serves on the Monroe County Library Board [of Trustees] and once wrote in the Monroe Journal that I, Brenda Taite[,] was the AL Sharpton of Monroeville. [] Stacy has also written other incendiary, racist and inflammatory remarks about me in the Monroe Journal and on Facebook.")).

Plaintiff's general allegations read, in their entirety, as follows:

54.     Joe McKissick[,] a Monroe County Commissioner[,] nominated James Steven Stacey to the Monroe County [Library] Board of Trustees and Lum Childs and Corey Morrow, Monroe County Commissioners[,] seconded Stacey's nomination to the Board.

55.     Stacey served as a Board member and employee of the Monroe County [Library] Board of Trustees, which was a violation of the State of Alabama Ethics Law.

56.     Monroe County Commissioner Billy Ghee stated that the white people did not want to hire the plaintiff, Brenda Taite[,] for the position to serve on the Monroe County [Library] Board of Trustees, even though she was qualified to serve in the position.

57.     Commissioner Ghee wanted to appoint Beverly Colquett, white[,] to serve on the Monroe County [Library] Board of Trustees even though[] Ghee serves a predominantly Black district.

58.     Probate Judge Greg Norris [and] Mobile County Commissioners[] Lum Childs, Billy Ghee, Joe McKissick, and Corey Morrow acted in conspiracy with the Monroe County [Library] Board of Trustees[--] Ann Pridgen, La Shannon Hollinger, James Steven Stacey, and Shannon Powell[--] and were acting under the authority of the color of state law to prevent [Taite] from being hired for the position of librarian because of my race and age.

59.     The Monroe County Public Library is an Agency of Monroe County and was [not] incorporated as a not-for-profit until March 21, 2018.

60.     The Monroe County Public Library receives 50% of [its] funding from the County and the Probate Judge and County Commissioners appoint the members of the Monroe County [Library] Board of Trustees.

61.     The Monroe County Public Library is not a private entity and has alleged that Title VII of the Civil Rights Act of 1964 does not apply to [it] because [it] ha[s] less than 15 employees but the library is a part of Monroe County.

62.     The EEOC had issued a finding of race discrimination and email was sent to me by my investigator in July 2018, regarding the damages.

63.     Several months later, the EEOC investigator told me that the Monroe County Public Library was not a part of the County.

64.     The Monroe County Public Library did not register with the Secretary of the State of Alabama to become a nonprofit organization until April 2018 and I was not selected for the position because of my race and retaliated against because of my racial discrimination complaint with the EEOC in October 2016.

65.     The Monroe County Public Library receives 50% of its funding from the library (sic)[5] and they share employees.

66.     Therefore, the Monroe County Public Library is an Agency of Monroe County as the Monroe County Commissioners appoint the members of [the] Monroe County Library Board of Trustees.

67.     The Monroe County Commission also pays the utility bills for the Monroe County Public Library and legislate to the Monroe County [Library] Board of Trustees who sits on the Board.

68.     Monroe County Commissioner Billy Ghee refused to appoint me to serve on the Monroe County [Library] Board of Trustees in the year 2015 because he stated that the white people did not want me to serve on [the] Monroe County Library Board of Trustees.

---

[5]     Presumably, Taite intended to aver that the library receives 50% of its funding from Monroe County. (*See id.* at ¶ 66).

69.     James Steve Stacy was appointed by Joe McKissick to serve on the Monroe County [Library] Board of Trustees and Corey Morrow and Lum Childs seconded it even though Stacy was an employee of the Monroe County Library[,] which was a gross violation of the Alabama State Ethics Law.

70.     Ann Pridgen, Shannon Powell, La Shannon Hollinger, Steve Stacey and the Monroe County Board of Commissioners and Judge Greg Norris colluded to no hire the plaintiff because of her race, which is Black.

(*Id.* at ¶¶ 54-70 (footnote added)).

On March 7, 2019, the EEOC notified Taite that it was terminating its investigation of the Monroe County Public Library under Title VII of the Civil Rights Act of 1964, as amended, and the Age Discrimination in Employment Act of 1967. (*See* Doc. 1, Attachment, at 1-2.)[6] The EEOC notified Plaintiff that it was terminating its Title VII investigation because the Monroe County Public Library, the respondent, "employs less than the required number of employees or is not otherwise covered by the statutes[]" (*id.*) and that the ADEA investigation was being terminated because of the EEOC's inability to conclude, based on the information that had been obtained, that violations of the statutes had occurred (*see id.*). Taite was informed of her right to file a lawsuit under federal law based upon her charge "against the respondent(s)" so long as she filed her lawsuit within 90 days of her receipt of the Dismissal and Notice of Rights. (*Id.*).

Taite initially filed her complaint in the United States District Court for the Northern District of New York on April 17, 2019 (*see* Doc. 1), quickly followed by the filing of an amended complaint on April 22, 2019 (Doc. 4), the operative pleading in this

---

[6]     In Taite's Charge of Discrimination, she named as respondent/employer the Monroe County Public Library Board of Trustees. (*See id., Charge of Discrimination*).

case. *Compare Rosa v. Florida Dep't of Corrections,* 522 Fed.Appx. 710, 714 (11th Cir. Jun. 26, 2013) ("Under the Federal Rules of Civil Procedure, 'an amended complaint supersedes the initial complaint and becomes the operative pleading in the case.'" (quoting *Krinsk v. SunTrust Banks, Inc.,* 654 F.3d 1194, 1202 (11th Cir. 2011)) *with DeSisto College, Inc. v. Line,* 888 F.2d 755, 757-758 (11th Cir. 1989) (acknowledging as proper the denial as moot of defendant's motion to dismiss the first amended complaint because the plaintiff filed a second amended complaint), *cert. denied,* 495 U.S. 952, 110 S.Ct. 2219, 109 L.Ed.2d 544 (1990). By Order entered on the docket on May 1, 2019, venue was found improper in the Northern District of New York and Taite's case was transferred to this Court pursuant to 28 U.S.C. § 1404(a). (Doc. 5).

In her amended complaint, Taite sets forth six counts: Count I raises a discrimination claim based on race and retaliation under Title VII of the Civil Rights Act of 1964, as amended; Count II avers the Defendants violated 42 U.S.C. § 1981; Count III avers the Defendants violated 42 U.S.C. § 1983; Count IV avers the Defendants violated 42 U.S.C. § 1985; Count V avers the Defendants violated 42 U.S.C. § 1986; and Count VI avers the Defendants violated Alabama's "Defamation law of slander and libel." (Doc. 4, at 10-12.) The lead paragraph of each count incorporates by reference each and every paragraph of the complaint before it (*see id.* at ¶¶ 72, 74, 76, 78 80 & 82) and the only other paragraph of each count contains a conclusory and rote statement that the Defendants violated a particular statute or law (*see id.* at ¶¶ 73, 75, 77, 79 81 & 83) and, with respect to § 1983, makes the statement that each individual sued was acting under color of state law and identifies the capacity or capacities upon which she is suing those individuals (*see id.* at ¶ 77).

## CONCLUSIONS OF LAW

**A.** **Pleading Standard.** The sufficiency of Plaintiff's claims to proceed beyond the pleading stage, and into discovery, is governed by the plausibility standard articulated by the United States Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), and further detailed in *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). In *Twombly,* the United States Supreme Court expressly abrogated the *Conley v. Gibson,* 355 U.S. 41 (1957) "no set of facts" pleading standard, holding that test "has earned its retirement" and "is best forgotten." *Twombly*, 550 U.S. at 563, 127 S.Ct. at 1969; *Simpson v. Sanderson Farms, Inc.,* 744 F.3d 702, 714 (11th Cir. 2014) ("[T]he Supreme Court categorically retired [the no set of facts test] in *Twombly.*").

Post *Twombly,* "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . . Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1965. The Court made clear that to satisfy the requirements of Fed.R.Civ.P. 8(a) "something beyond the mere possibility [of an entitlement to relief] must be alleged, lest a plaintiff with a largely groundless claim be allowed to take up the time of a number of other people[.]" *Id.* at 557-58, 127 S.Ct. at 1966 (internal quotation marks omitted; citations omitted). "This necessarily requires that a plaintiff include factual allegations for each essential element of his or her claim." *GeorgiaCarry.Org, Inc. v. Georgia,* 687 F.3d 1244, 1254 (11th Cir. 2012) (citations omitted), *cert. denied,* 568 U.S. 1088, 133 S.Ct. 856, 184 L.Ed.2d 656 (2013).

The Court directed that "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Twombly,* 550 U.S. at 558, 127 S.Ct. at 1966 (internal quotations marks and ellipses omitted; citations omitted). "It is no answer to say that a claim just shy of a plausible entitlement to relief can, if groundless, be weeded out early in the discovery process[.]" *Id.* at 559, 127 S.Ct. at 1967. "[T]he threat of discovery expense will push cost-conscious defendants to settle even anemic cases…[;]it is only by taking care to require allegations that reach the level [of showing a plausible entitlement to relief] that we can hope to avoid the potentially enormous expense of discovery[.]" *Id.*

The Eleventh Circuit has likewise emphasized the importance of only allowing plausible claims to proceed beyond the pleading stage: "Federal Rules of Civil Procedure 8(a)(2) and 12(b)(6) together establish a notice-pleading standard that is applied, in a context-specific manner, with the recognition that the imposition of litigation costs must be justified at the threshold by the presence of factual allegations making relief under the governing law plausible, not merely speculative." *ABB Turbo Systems AG v. Turbousa, Inc.* 774 F.3d 979, 984 (11th Cir. 2014); *see Chudasama v. Mazda Motor Corp.,* 123 F.3d 1353, 1367 & 1367-68 (11th Cir. 1997) (recognizing that "[d]iscovery imposes several costs on the litigant from whom discovery is sought[]" and "discovery imposes burdens on the judicial system; scarce judicial resources must be diverted from other cases to resolve discovery disputes."); Fed.R.Civ.P. 1 (recognizing that the Rules of Civil Procedure "should be construed, administered, and employed by

the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding.").

In *Iqbal,* the Supreme Court gave additional definition to the Rule 8(a) analysis framed in *Twombly*. The Court explained that under *Twombly*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949 (internal citations omitted). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679, 129 S.Ct. at 1950. Courts do not "'accept as true a legal conclusion couched as a factual allegation[.]'" *Id.* at 678, 129 S.Ct. at 1950 (citation omitted); *see also id.* at 678, 129 S.Ct. at 1949 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[.]").

The *Iqbal* Court made clear that "[t]he pleading standard Rule 8 announces…demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 678, 129 S.Ct. at 1949 (internal citations omitted). Consequently, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* at 679, 129 S.Ct. at 1950 (brackets and citation omitted). Therefore, dismissal of a factually

insufficient complaint is required because "Rule 8…does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678-79, 129 S.Ct. at 1950.

In *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283 (11th Cir. 2010), the Eleventh Circuit Court of Appeals distilled the *Twombly/Iqbal* pleading standard into a functional "two-prong approach" for the evaluation of the sufficiency of a plaintiff's pled allegations: "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Id.* at 1290 (citation omitted). The Eleventh Circuit also explained: "Importantly, the Court held in *Iqbal*, as it had in *Twombly*, that courts may infer from the factual allegations in the complaint 'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Id.* (citation omitted).

Additionally, it is well-established that dismissal is required when the factual averments in a complaint affirmatively foreclose the existence of a plausible entitlement to relief. *See, e.g., Villarreal v. R.J. Reynolds Tobacco Co.,* 839 F.3d 958, 971 (11th Cir. 2016) ("A plaintiff nonetheless can plead himself out of court by alleging facts that foreclose a finding of diligence or extraordinary circumstances, both of which are required for equitable tolling."), *cert. denied,* ___ U.S. ___, 137 S.Ct. 2292, 198 L.Ed.2d 724 (2017); *Best Canvas Prods. & Supplies, Inc. v. Ploof Truck Lines, Inc.,* 713 F.2d 618, 621 (11th Cir. 1983) ("[A] party is bound by the admissions in his pleadings."). "[A] plaintiff can plead himself out of court. If he alleges facts that show he isn't entitled to a

judgment, he's out of luck." *Early v. Bankers Life & Cas. Co.,* 959 F.2d 75, 79 (7th Cir. 1992) (internal citations omitted).

In addition to the pled averments relevant to these Plaintiffs' claims, documents which are referenced in, or central to, the claims presented are incorporated as exhibits to the complaint, and may be considered without converting a Fed.R.Civ.P. 12(b) motion to dismiss into a Fed.R.Civ.P. 56 motion for summary judgment. *Horsley v. Feldt,* 304 F.3d 1125, 1134 (11th Cir. 2002); *see also Day v. Taylor,* 400 F.3d 1272, 1276 (11th Cir. 2005). "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed.R.Civ.P. 10(c). Therefore, in ruling on a motion to dismiss, courts consider "the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.,* 358 F.3d 840, 845 (11th Cir. 2004) (citations omitted). "Indeed, when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." *Griffin Indus., Inc. v. Irvin,* 496 F.3d 1189, 1206 (11th Cir. 2007) (citations omitted), *cert. denied,* 553 U.S. 1004, 128 S.Ct. 2055, 170 L.Ed.2d 794 (2008).

**B.   Shotgun Pleadings.  "**Shotgun pleadings violate Rule 8(a)(2)'s 'short and plain statement' requirement by 'failing . . . to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests.'" *McDonough v. City of Homestead,* 771 Fed.Appx. 952, 955 (11th Cir. May 7, 2019), quoting *Vibe Macro, Inc. v. Shabanets,* 878 F.3d 1291, 1294-95 (11th Cir. 2018) (other citation omitted). Stated somewhat differently, a shotgun pleading is defined by "[t]he failure to identify claims with sufficient clarity to enable the defendant to frame a responsive

pleading[.]" *Beckwith v. Bellsouth Telecommunications Inc.,* 146 Fed.Appx. 368, 371 (11th Cir. Aug. 22, 2005), citing *Byrne v. Nezhat,* 261 F.3d 1075, 1129-30 (11th Cir. 2001).

In describing the nature of a shotgun pleading, the Eleventh Circuit has observed that "[t]he typical shotgun complaint contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts . . . contain irrelevant factual allegations and legal conclusions." *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.,* 305 F.3d 1293, 1295 (11th Cir. 2002). Such pleadings typically are characterized by either factually unsupported claims or an inability to discern which allegations of fact are intended to support which claims and frequently fail to specify which defendant is responsible for each act alleged. *Beckwith, supra,* 146 Fed.Appx. at 372; *cf. McDonough, supra,* 771 Fed.Appx. at 955 ("Shotgun pleadings are characterized by: (1) multiple counts that each adopt the allegations of all preceding counts; (2) conclusory, vague, and immaterial facts that do not clearly connect to a particular cause of action; (3) failing to separate each cause of action or claim for relief into distinct counts; or (4) combining multiple claims against multiple defendants without specifying which defendant is responsible for which act."). As a result, a district court "'whose time is constrained by the press of other business, is unable to squeeze the case down to its essentials.'" *PVC Windoors, Inc. v. Babbitbay Beach Constr., N.V.,* 598 F.3d 802, 806 n.4 (11th Cir. 2010), quoting *Johnson Enterprises of Jacksonville, Inc. v. FPL Group, Inc.,* 162 F.3d 1290, 1333 (11th Cir. 1998). And, consequently, the Eleventh Circuit has instructed district courts to prohibit shotgun pleadings as fatally defective. *See, e.g., B.L.E. ex rel. Jefferson v. Georgia,* 335

Fed.Appx. 962, 963 (11th Cir. Oct. 23, 2009) (citations omitted). To allow such a pleading would place an unjustifiable burden on the Court to take on the virtually impossible task of "ascertain[ing] what factual allegations correspond with each claim and which claim is directed at which defendant." *Beckwith, supra,* 146 Fed.Appx. at 372.

      **C.**   **Analysis.** Taite's amended complaint (Doc. 4) is a quintessential shotgun pleading because she has not only incorporated every antecedent allegation by reference into each and every subsequent claim for relief, of which there are six (*see id.* at ¶¶ 72, 74, 76, 78, 80 & 82),[7] she has also failed to specify which defendant is (or defendants are) responsible for each act alleged (*see generally* Doc. 4, at 10-12).[8] In short, it is extremely difficult for the undersigned to discern which allegations of fact set forth in the amended complaint are intended to support each of Taite's six claims and, therefore, her shotgun pleading does not comport with the standards of Rules 8(a) and 10(b) of the Federal Rules of Civil procedure. It is **RECOMMENDED** that Taite's amended complaint be stricken and dismissed for failure to comply with the pleading requirements of the Federal Rules of Civil Procedure. It is further recommended that Taite be given one chance to amend her complaint to cure all pleading deficiencies and bring any viable claim she may have against one or more of the Defendants, *see LaCroix v. Western District of Kentucky,* 627 Fed.Appx. 816, 819 n.1 (11th Cir. Sept. 28,

---

[7]     In truth, even though there are six separate counts, Plaintiff has set forth no elements of any of the counts/claims and certainly does not reference specific paragraphs in the fact section (many of which, as an aside, are wholly conclusory and confusing) establish those elements. (*See id.*).

[8]     Plaintiff's belated admission that her defamation claim is asserted only against Defendant James Steven Stacey (*see* Doc. 29, at 7), does nothing but highlight the need to strike Plaintiff's complaint as a fatally defective shotgun pleading.

(Continued)

2015), *cert. dismissed,* ___ U.S. ___, 136 S.Ct. 996, 194 L.Ed.2d 2 (2016);[9] at the same time, however, it is the undersigned's recommendation that the Court should act now to dismiss most of Plaintiff's claims with prejudice, without allowing amendment of those claims, inasmuch as it impossible for Taite to state certain claims she wishes to pursue in this Court. *Compare LaCroix, supra, with, e.g., Shorter v. J. Hillis Miller Health Center,* 2015 WL 1540527 (N.D. Fla. Apr. 7, 2015) (disallowing amendment to correct deficiencies in complaint because Plaintiff's § 1983 claim was barred by the applicable statute of limitations, such that any amendment would be futile).

    **D.**    **Taite's Asserted Claims.** Plaintiff states in a cursory manner that all the Defendants have violated Title VII of the Civil Rights Act of 1964, as amended, by discriminating against her on account of her race and by retaliating against her (*see* Doc. 4, at 10-11) and alleges, in a conclusory manner, that all Defendants have violated 42 U.S.C. § 1981; 42 U.S.C. § 1983; 42 U.S.C. § 1985; 42 U.S.C. § 1986; and Alabama's "Defamation law of slander and libel." (*Id.* at 11-12). Save for her Title VII claims, it is **RECOMMENDED** that all of Plaintiff's remaining claims be **DISMISSED WITH PREJUDICE** because they are barred by the applicable limitations periods. The undersigned first addresses Plaintiff's statutory claims before turning to her Alabama state law defamation claim(s).

---

      [9]     The Plaintiff, however, is relegated to determining whether she has factual support to allege Title VII claims against the Monroe County Commission, the Monroe County Public Library, and the Mobile County Public Library Board of Trustees, as set forth hereinafter, because she has admitted that she possesses no viable ADEA claim. (*See* Doc. 30, at 13 (Taite's admission that an EEOC investigator told her that she did not have an age claim because Darlene Thompson was in her age group)). As well, Taite should be given an opportunity to determine whether she has a factual foundation to assert a defamation claim against Defendant James Steven Stacey.

(Continued)

1.    <u>**42 U.S.C. §§ 1981, 1983, 1985 & 1986—Statutes of Limitations**</u>.

Except for § 1986,[10] the federal civil rights statutes do not contain statutes of limitations

provisions. *See* 42 U.S.C. §§ 1981, 1983 & 1985. However, relevant caselaw

demonstrates that the applicable limitations period for §§ 1981, 1983 and 1985 claims is

two years.

> In *Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254
> (1985), the Supreme Court held that in characterizing a § 1983 claim for
> statute of limitation purposes, federal law was controlling; that a single
> statute of limitations should be selected to govern all § 1983 claims; and
> that because claims under § 1983 are in essence claims for personal
> injury, the state statute applicable to personal injury should be borrowed.
> *Id.* at 270, 275, 276-80, 105 S.Ct. at 1943, 1946, 1947-49. The Supreme
> Court extended *Wilson*'s rationale to § 1981 actions in *Goodman v.
> Lukens Steel Co.,* 482 U.S. 656, 660, 107 S.Ct. 2617, 96 L.Ed.2d 572
> (1987). The Eleventh Circuit has held that the same is true for suits
> brought under 42 U.S.C. § 1985. *See Trawinski v. United Technologies,*
> 313 F.3d 1295, 1298 (11th Cir. 2002).

> The statutory period of limitations for plaintiff's claims pursuant to
> 42 U.S.C. §§ 1981, 1983 and 1985 is two years. *See* Alabama Code § 6-
> 2-38(l) ("actions for any injury to the person or rights of another not arising
> from contract and not specifically enumerated in this section must be
> brought within two years") and (n) ("actions commenced to recover
> damages for injury to the person . . . wherein a principal or master is
> sought to be held liable . . . under the doctrine of *respondeat superior*
> must be brought within two years").

*C & J Associates Pest Control v. McMullen,* 2007 WL 9711443, *4 (N.D. Ala. June 12,

2007); *see also Owens v. Okure,* 488 U.S. 235, 249-50, 109 S.Ct. 573, 574 & 580-81,

102 L.Ed.2d 594 (1989) (holding that in § 1983 suits federal courts are to borrow the

---

[10]    42 U.S.C. § 1986 specifically includes a one-year limitations period.  *See id.*
("[N]o action under the provisions of this section shall be sustained which is not commenced
within one year after the cause of action has accrued.").

(Continued)

"general" or "residual" statute of limitations for personal injuries provided under the law of the State where the court hearing the case sits).

The statute of limitations for Plaintiff's claims brought under §§ 1981,[11] 1983 and 1985 is two years and one year for her claim brought under § 1986. The Court now turns to the critical question of determining when those limitations periods began to run. Eleventh Circuit law is clear that "[a] statute of limitations begins to run when the cause of action accrues." *Kelly v. Serna,* 87 F.3d 1235, 1238 (11th Cir. 1996); *see also id.* at 1238-39 ("Accrual of a cause of action under 42 U.S.C. § 1983 is a question of federal law."); *Cotton v. Onderdonk,* 2016 WL 7365205, *11 (S.D. Ala. Nov. 10, 2016) (recognizing that federal law governs when a statute of limitations begins to run and that this is when the cause of action accrues), *report and recommendation adopted,* 2016 WL 7366080 (S.D. Ala. Dec. 19, 2016). In other words, "[t]he question of when the

---

[11]    It is certainly true that Congress created a "catch-all" four-year limitations period for actions under federal statutes enacted after December 1, 1990. *See* 28 U.S.C. § 1658. However, §§ 1983 and 1985 were not enacted after December 1, 1990 and, therefore, this "catch-all" provision is not applicable to these claims. *See, e.g., Wynn v. County Bd. of Educ. of Richmond County,* 2007 WL 9710842, *1 (S.D. Ga. Jan. 25, 2007). Moreover, the four-year catch-all limitations period is not applicable to Plaintiff's § 1981 claim inasmuch as a § 1981 claim based on alleged discrimination "in the formation of a contract," which Plaintiff's claim decidedly is (Taite alleging that she was not hired as director/librarian because of her race and age), the State (that is, Alabama's) "statute of limitations for personal injury actions" govern rather than the four-year statute of limitations in § 1658. *Compare Grimes v. Board of Regents of University System of Georgia,* 650 Fed.Appx. 647, 651 (11th Cir. May 24, 2016) (finding Plaintiff's claim of failure to admit her into the Sports Management Program fell within the pre-amendment version of § 1981, covering discrimination in the making and enforcement of contracts, such that Georgia's personal injury two-year statute of limitations was applicable), *cert. denied sub nom. Grimes v. Todd*, 137 S.Ct. 659, 196 L.Ed.2d 550 (2017), *with Jones v. R.R. Donnelley & Sons Co.,* 541 U.S. 369, 382-84, 124 S. Ct. 1836, 1845-46, 158 L.Ed.2d 645 (2004) (holding that a cause of action arises under an Act of Congress enacted after December 1, 1990, and therefore, is governed by § 1658's 4-year limitations period, only if the plaintiff's claim against defendant was made possible by a post-1990 enactment and further determining that the "petitioners' hostile work environment, wrongful termination, and failure to transfer claims 'ar[ose] under' the 1991 Act in the sense that petitioners' causes of action were made possible by that Act.").

limitations period begins to run (that is, when the cause of action has accrued), is one of federal law." *Smith v. Shorstein,* 217 Fed.Appx. 877, 881 (11th Cir. Feb. 13, 2007), citing *Rozar v. Mullis,* 85 F.3d 556, 561 (11th Cir. 1996)."The general federal rule is that a cause of action 'will not accrue, and thereby set the limitations clock running, until the plaintiffs know or should know (1) that they have suffered the injury that forms the basis of their complaint and (2) who has inflicted the injury.'" *Id.,* quoting *Chappell v. Rich,* 340 F.3d 1279, 1283 (11th Cir. 2003)(other citation omitted).

Here, Plaintiff's statutory civil rights claims under §§ 1981, 1983, 1985 and 1986 are based upon her failure to be selected for the position of Director of the Monroe County Public Library (that is, librarian) and the retaliatory actions she has ascribed to Defendant Stacey. (*See* Doc. 4.) The allegations of the amended complaint and EEOC attachments to Plaintiff's original complaint (Doc. 1, Attachments) establish that Taite was aware of the alleged discrimination by the Monroe County Public Library Board of Trustees by not later than October 28, 2016 and was aware of the retaliation of Stacey by not later than November 3, 2016.[12] Accordingly, the two-year limitations period under §§ 1981, 1983 and 1985 began to "run," at the latest, on November 3, 2016 and expired on November 3, 2018 and the one-year limitations period under § 1986 also began to run on November 3, 2016 and expired on November 3, 2017. And since Plaintiff did not

---

[12]     Even if this Court was to assume that the facts supporting Taite's statutory civil rights claims (under §§ 1981, 1983, 1985 and 1986) were not apparent until after she filed her charge of discrimination with the EEOC on November 12, 2016 (*see* Doc. 1, Charge of Discrimination dated November 12, 2016)), the various statute of limitations still expired at least 5 months (or as many as 17 months, for the § 1986 claim) before Taite filed her initial complaint on April 17, 2019 (Doc.1).

file her original complaint until April 17, 2019 (*see* Doc. 1), her claims under these statutory civil rights statutes are time-barred and should be dismissed with prejudice.

Plaintiff makes no tolling argument (*compare* Doc. 30, at 8 *with* Doc. 33, at 8-9) and the Court should reject any belated tolling argument by Ms. Taite. *Cf. Barrett v. United Ins. Co. of America, Inc.,* 2019 WL 4635644, *4 (S.D. Ga. Sept. 23, 2019) ("'A statute of limitations defense can support dismissal under Rule 12(b)(6) only if it is clear from the face of the complaint that the statute of limitations has run, and it appears beyond doubt that the plaintiff can prove no set of facts that toll the statute.'"). Initially, the undersigned notes that Alabama's tolling provision, Ala.Code § 6-2-8(a), has no application in this case because Ms. Taite is neither below the age of 19 or insane, *see id.* Moreover, Taite can make no argument that her filing of the charge of discrimination with the EEOC tolled these limitations periods, as such argument has been soundly rejected. *Compare Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 466, 95 S.Ct. 1716, 1723, 44 L.Ed.2d 295 (1975) (holding that the pendency of an EEOC claim does not toll the statute of limitations for a private civil rights claim—in that case, a § 1981 claim—because the two claims are "truly independent") *with Lewis v. Asplundh Tree Expert Co.,* 305 Fed.Appx. 623, 626 (11th Cir. Dec. 30, 2008) ("Lewis argues that the statute of limitations should be tolled for the period of the EEOC investigation. The Supreme Court has held, however, that the pendency of an EEOC claim does not toll the statute of limitations for a private civil rights claim because the two claims are 'truly independent.' . . . Here, the injury that forms the basis of Lewis' § 1983 claim is the alleged noose incident, which occurred on April 1, 1996. He did not file this action until almost eight years later. As the district court pointed out, even if we assume that the

facts supporting Lewis' § 1983 claim were not apparent until after he contacted the

EEOC in August of 1996, the statute of limitations expired well before Lewis filed his

complaint on May 25, 2004.") and *Smith v. McClammy,* 740 F.2d 925, 927 (11th Cir.

1984) ("Since exhaustion of administrative remedies is not a prerequisite to filing [a §

1983] suit, the statute [of limitations] would not be tolled pending pursuit of

administrative remedies but would begin to run on the date the cause of action

accrued.").[13] And, finally, "[e]ven if the Court applied the federal rules for equitable

tolling, which it should not, those rules would still not save" Plaintiff's statutory civil rights

claims under §§ 1981, 1983, 1985 and 1986. *Ash v. Douglas County,* 2015 WL

12591772, *7 (N.D. Ga. July 31, 2015).

> Under federal law, "[e]quitable tolling is a rare remedy to be applied in unusual circumstances, not a cure-all for an entirely common state of affairs." Wallace, 549 U.S. at 396. The Eleventh Circuit has determined that equitable tolling is a[] remedy that is to be applied sparingly, but may be "appropriate when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence." Drew, 297 F.2d at 1286 (emphasis added). Such extraordinary circumstances "include fraud, misinformation, or deliberate concealment," Jackson v. Astrue, 506 F.3d 1349, 1355 (11th Cir. 2007), and in the case of employment discrimination claims, a plaintiff bears the burden of showing either that (1) a state court action is pending that has jurisdiction over the claims to be tolled; (2) the defendant has concealed facts giving rise to a discrimination claim; or (3) the defendant himself misled the employee about the nature of her rights under anti-discrimination statutes, Manning v. Carlin, 786 F.2d 1108, 1109 (11th Cir. 1986) . . . .

*Id.* The undersigned observes here that Ms. Taite has made no showing whatsoever

that she is entitled to equitable tolling under the federal rules for equitable tolling;

---

[13]     Similarly, as noted in *Grimes, supra,* "[p]laintiffs are not required to exhaust administrative remedies before bringing a § 1981 claim." 650 Fed.Appx. at 650 n.4, citing *Caldwell v. National Brewing Co.,* 443 F.2d 1044, 1046 (5th Cir. 1971).

therefore, the Court should reject any subsequent effort by Plaintiff to establish that her case is one that countenances this rare remedy.

In light of this analysis, the Magistrate Judge **RECOMMENDS** that the Court **DISMISS** Counts II through V of Plaintiff's amended complaint (Doc. 4), asserting claims under 42 U.S.C. §§ 1981, 1983, 1985 and 1985 (*id.* at 11-12), **WITH PREJUDICE** because all of these statutory civil rights claims are time-barred.

       **2.**     <u>**Defamation Claim(s)—Statute of Limitations**</u>.  Alabama law is clear that "[a]ll actions of libel or slander must be brought within two years." Ala.Code § 6-2-38(k). Additionally, "[t]he statute of limitations for a claim alleging defamation 'begins to run at the time [the cause of action] accrues, that is, when the defamatory matter is published.'" *Hollander v. Nichols,* 19 So.3d 184, 194-95 (Ala. 2009), quoting *Tonsmeire v. Tonsmeire,* 285 Ala. 454, 458, 233 So.2d 465, 467 (1970).

Although Taite does not specifically "date" the alleged defamatory comments made by Defendant James Steven Stacey supporting Count VI of her amended complaint (*see* Doc. 4, at ¶¶ 22-23 ("James Steven Stacy currently serves on the Monroe County Library Board [of Trustees] and once wrote in the Monroe Journal that I, Brenda Taite[,] was the AL Sharpton of Monroeville. [] Stacy has also written other incendiary, racist and inflammatory remarks about me in the Monroe Journal and on Facebook.")),[14] it is clear that all of these purported defamatory comments were published by Stacey (and known by Taite) before Plaintiff signed her charge of

---

[14]     Taite made clear in her response in opposition to Stacey's motion to dismiss that she meant to assert her defamation count solely against Defendant Stacey. (*See* Doc. 29, at 7 ("The Plaintiff's claim arising under the law of the State of Alabama to redress libel, slander, and the defamation claims apply only to James Steven Stacey (Stacey)[.]")).

discrimination on November 12, 2016 (and, most probably, by not later than November 3, 2016), as those same defamatory statements are included in Plaintiff's narrative statement attached to her EEOC charge of discrimination (*see* Doc. 1, Attached Charge of Discrimination, Narrative Section ("EEOC Complaint November 3, 2016[.] . . . "Steve Stacy currently serves on the Monroe County Library Board [of Trustees] and once wrote in the Monroe Journal that I, Brenda Taite[,] was the AL Sharpton of Monroeville. Stacy has also written other incendiary, racist and inflammatory remarks about me in the Monroe Journal and on Facebook.")). And since Taite did not file her original complaint until April 19, 2019, more than two years after Stacey made all of the defamatory statements Plaintiff complains about in her amended complaint, the undersigned recommends that Plaintiff's defamation count be **DISMISSED WITH PREJUDICE** as time-barred.[15]

---

[15] Again, Alabama's tolling provision, Ala.Code § 6-2-8(a) has no application in this case because Ms. Taite is neither below the age of 19 or insane, *see id.* Also, again, Taite can make no argument that her filing of the charge of discrimination with the EEOC tolled the two-year limitations period for filing a state-law defamation claim/action. *Compare, e.g., Scott v. Transport America, Inc.,* 89 F.Supp.3d 1275, 1285 (N.D. Ala. 2015) ("This court holds that, because the state law claims in this case are not Title VII claims, they are 'separate,' 'distinct,' and 'independent' of the Title VII claims. For that reason, the statutes of limitations applicable to those claims were not tolled by the Title VII administrative proceedings.") *with Kelley v. Wal-Mart Stores East, LP,* 2013 WL 608030 (S.D. Ala. Feb. 19, 2013) (finding statute of limitations was not tolled during the EEOC proceeding and that Plaintiff's state-law claims were time-barred).

To the extent Plaintiff argues in her response in opposition that Stacey is still writing libelous comments about her on Facebook (*see* Doc. 29, at 8), the undersigned agrees with Defendant Stacey that these newly-alleged instances of "continuing" defamation cannot be considered by the Court in ruling on Stacey's motion to dismiss as they are absent from Plaintiff's amended complaint. *Compare, e.g., Huls v. Llabona,* 437 Fed.Appx. 830, 832 n.5 (11th Cir. Aug. 15, 2011) (holding that an argument raised for the first time in response to a defendant's motion to dismiss, instead of in an amended complaint, was not properly raised before the district court and could not be considered on appeal), *cert. denied,* 565 U.S. 1203, 132 S.Ct. 1615, 182 L.Ed.2d 174 (2012), and *Wonders v. Crutchfield,* 2013 WL 2453535, *2 n.1 (M.D. Ala. June 4, 2013) (finding that "Plaintiff may not amend his complaint through argument (Continued)

3. **Title VII Claims**.  Taite avers in her amended complaint that the named Defendants discriminated against her on account of race and also retaliated against her upon learning of her complaints to the EEOC. (*See* Doc. 4.)[16] The undersigned **RECOMMENDS** that Plaintiff's Title VII claims against all individually-named Defendants (specifically, Jerome Sanders, Ann Pridgen, Shannon Powell, La Shannon Hollinger, James Steven Stacey, Lum Childs, Billy Ghee, Corey Morrow, Joe W. McKissick, former Monroe County Probate Judge Greg Norris, and current Monroe County Probate Judge Sonya Stinson), brought as they are against these Defendants in their individual and/or official capacities, be **DISMISSED WITH PREJUDICE**. It is well-established that Title VII does not allow for individual capacity suits. *See Dearth v. Collins,* 441 F.3d 931, 933 (11th Cir.) ("[T]he relief granted under Title VII is against the employer, not against individual employees whose actions would constitute a violation of the Act." (internal quotation marks omitted)), *cert. denied,* 549 U.S. 822, 127 S.Ct.

---

in his responsive brief[.]")  *with Jallali v. Nova Southeastern Univ., Inc.,* 486 Fed.Appx. 765, 767 (11th Cir. Aug. 9, 2012) ("[A] party cannot amend a complaint by attaching documents to a response to a motion to dismiss."), *cert. denied,* 568 U.S. 1250, 133 S.Ct. 1638, 185 L.Ed.2d 618 (2013); *see Varazo v. Keiser Corp.,* 754 Fed.Appx. 918, 919 (11th Cir. Nov. 30, 2018) ("'A plaintiff may not amend [his] complaint through argument in a brief opposing summary judgment.'"). When, and if, Taite files a second amended complaint, she may include a defamation count against Stacey provided she identifies the appropriate legal elements (of libel or slander) and facts establishing that the defamatory comments were published within 2 years of the date upon which she initially filed her complaint (that is, within 2 years of April 17, 2019). *See, e.g., Exportadora Atlantico, S.A. v. Fresh Quest, Inc.,* 2017 WL 7792710, \*4 (S.D. Fla. Feb. 21, 2017) ("If Plaintiff avails [herself] of the opportunity to file an Amended Complaint, Plaintiff should plead the elements of each cause of action and succinctly attribute the facts as they relate to each defendant and each cause of action in accordance with the Federal Rules.").

[16]    As reflected above, the "facts" relative to Plaintiff's retaliation claim contained in the amended complaint call into question only the actions of Defendant James Steven Stacey (*see id.* at ¶ 13); therefore, the retaliation claim, in truth, should be **DISMISSED WITH PREJUDICE** with respect to all other individually-named Defendants.

153, 166 L.Ed.2d 37 (2006); *Yeldell v. Cooper Green Hosp., Inc.,* 956 F.2d 1056, 1060 (11th Cir. 1992) ("Title VII actions are not appropriately brought against government officials in their personal capacities."); *Busby v. City of Orlando,* 931 F.2d 764, 772 (11th Cir. 1991) ("Individual capacity suits under title VII are . . . inappropriate."); *Taite v. Alabama, Dep't of Personnel,* 2012 WL 3631619, *5 (M.D. Ala. July 16, 2012) (dismissing Title VII claims against a defendant sued in her individual capacity on the basis of longstanding "law in the Eleventh Circuit that Title VII does not provide a cause of actions against individuals."), *report and recommendation adopted,* 2012 WL 3629216 (M.D. Ala. Aug. 23, 2012). Moreover, Plaintiff's Title VII claims against all the individuals identified above, in their official capacities, must be dismissed because such claims are redundant to the claims against the Monroe County Commission and/or the Monroe County Public Library Board of Trustees/Monroe County Public Library. *Compare, e.g., Shoots v. City of Mobile,* 2013 WL3281875, *3 (S.D. Ala. June 28, 2013) (finding that Plaintiff's Title VII claims against individual defendants in their official capacities to be redundant to claims asserted against the defendant employer) *with Portera v. State of Alabama Dep't of Finance,* 322 F.Supp.2d 1285, 1287 (M.D. Ala. 2004) (finding Title VII claim against defendant McClenney in his official capacity redundant since the Finance Department was already a defendant), *aff'd,* 133 Fed.Appx. 739 (11th Cir. Mar. 16, 2005). Again, therefore, Plaintiff's Title VII claims asserted against all individual defendants, in their individual and official capacities, should be **dismissed with prejudice** since Taite has asserted those claims against her employer (the Monroe County Library Board of Trustees/Monroe County Public Library) and "purported" employer (the Monroe County Commission).

As for Plaintiff's Title VII claims against the Monroe County Commission, the Monroe County Public Library Board of Trustees, and the Monroe County Public Library, the undersigned **RECOMMENDS** that the Court **DECLINE**, at present, to dismiss those claims with prejudice inasmuch as the cases relied upon by the movants were decided on summary judgment, *see, e.g., Lyes v. City of Riviera Beach, Fla.,* 166 F.3d 1332 (11th Cir. 1999) (appeal following entry of summary judgment); *Oaks v. City of Fairhope, Alabama,* 515 F.Supp. 1004 (S.D. Ala. 1981) (summary judgment), not on motion to dismiss. Instead, the undersigned simply **RECOMMENDS** that Plaintiff's Title VII claims against these three defendants be **DISMISSED WITHOUT PREJUDICE** to allow Plaintiff the opportunity to decide whether she wishes to continue to assert these claims against the Monroe County Commission, the Monroe County Public Library Board of Trustees, and the Monroe County Public Library.[17] This approach is particularly apropos given that this Court should extend to Plaintiff the opportunity to amend her complaint to assert any timely and viable defamation claim she may have against James Steven Stacey.[18]

## CONCLUSION

Based upon the foregoing, it is **RECOMMENDED** that the Defendants' motions to dismiss Plaintiff's amended complaint (*see* Docs. 16-17, 21 & 25) be **GRANTED IN PART** and **DENIED IN PART**. Based on the foregoing discussion, the undersigned

---

[17]     This will allow the Plaintiff to fully digest the Defendants' positions and the cases they cite and determine, in light of ***controlling Eleventh Circuit precedent***, whether she wishes to continue to pursue these Title VII claims.

[18]     In particular, Plaintiff will be expected to set forth all the elements of her claim (identifying whether it is a libel or slander claim) and the facts supporting those elements.

**RECOMMENDS** the following: (1) the **dismissal, with prejudice**, of Counts II through V of Plaintiff's amended complaint; (2) the **dismissal, with prejudice**, of Count VI of Plaintiff's amended complaint (as presently pled), which Plaintiff admitted was brought solely against Defendant James Steven Stacey; (3) the **dismissal, with prejudice**, of Plaintiff's Title VII claims (set forth in Count I) against the individual defendants, in their individual and official capacities; and (4) the **dismissal, without prejudice**, of Plaintiff's Title VII claims (set forth in Count I) against the Monroe County Commission, the Monroe County Public Library Board of Trustees, and the Monroe County Public Library. Additionally, it is **RECOMMENDED** that Plaintiff's amended complaint be **DISMISSED WITHOUT PREJUDICE** as a shotgun pleading, except with respect to the prejudicial dismissals identified above, and that Plaintiff be allowed a period of time (e.g., 30 days following final disposition of the pending motions to dismiss) to file a second-amended complaint to include therein any viable Title VII claims and any timely and specifically-delineated defamation claim against James Steven Stacey.[19]

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P.

---

[19] Plaintiff should be **FOREWARNED** that any failure on her part to conform her second-amended complaint to those Title VII claims identified herein against her employer(s), as well as a timely and specifically-delineated defamation claim against James Steven Stacey, will result in the immediate entry of a report and recommendation that her second-amended complaint be stricken for failure to comply with the orders of this Court. For example, should Plaintiff insist on "retaining" individual defendants, other than Mr. Stacey, it will be the undersigned's recommendation that her second-amended complaint be stricken.

72(b); S.D.ALA. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

      **DONE** this the 7th day of November, 2019.

                        s/P. Bradley Murray
                        **UNITED STATES MAGISTRATE JUDGE**