-

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

BRENDA TAITE,                                    :

      Plaintiff,                              :

vs.                                              :          CA 19-0212-TFM-MU

MONROE COUNTY PUBLIC                             :
LIBRARY, et al.,
                                                 :
      Defendants.

## REPORT AND RECOMMENDATION

This cause is before the Magistrate Judge for issuance of a report and

recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. GenLR

72(a)(2)(S), on Plaintiff's Second Amended Complaint (Doc. 44), the Monroe County

Commission's motion to dismiss (Doc. 46; *see also* Doc. 47), the motion to dismiss filed

by the Monroe County Public Library  (Doc. 51; *see also* Doc. 52), the Monroe County

Public Library Board of Trustees' motion for summary judgment (Doc. 53; *see also* Doc.

54), the Plaintiff's objections to each motion (*see* Docs. 56-57 & 61-62), and the

movants' separate replies (*see* Docs. 59, 66 & 67). In addition, in relation to the motion

for summary judgment filed by the Monroe County Public Library Board of Trustees

(hereinafter, "Board"), Plaintiff seeks to strike the Declaration of Shannon Powell (Doc.

64; *compare id. with* Doc. 54, Attached Declaration of Shannon Powell)), while the

Board seeks to strike the Declaration of Mary Harris (Doc. 68; *compare id. with* Doc. 63,

Exhibit 1, Declaration of Mary A. Harris)).  Based on the contents of these and all other

relevant pleadings in this matter, the Magistrate Judge issues the following report and recommendation.

## FACTUAL BACKGROUND

Plaintiff Brenda Taite filed her Second Amended Complaint on March 2, 2020. (Doc. 44). Taite generally alleges that she applied for the position of Director of the Monroe County Public Library (hereinafter, "Library") in September of 2016, was granted an interview by the Board, interviewed for that position on October 17, 2016, and received a rejection letter on October 28, 2016 from the Board's Chairperson Ann Pridgen. (*See id.* at ¶¶ 6 & 8). She also avers that all members of the Board are appointed by the Monroe County Commission (hereinafter, "MCC"). (*Id.* at ¶ 7). Plaintiff alleges that she was not hired on account of her race. (*See id.* at ¶ 5). She also avers that the Board, the Library, and the MCC retaliated against her for filing an EEOC complaint when Board member James Steven Stacey circulated a copy of her EEOC complaint to the news media and members of the general public (including library patrons). (*See id.* at ¶¶ 11 & 18). Based on these general allegations, Taite asserts in the first two counts of her Second Amended Complaint that the Library, the Board, and the MCC discriminated against her on the basis of race and retaliated against her for engaging in protected activity, all in violation of Title VII of the Civil Rights Act of 1964. (*See id.* at ¶¶ 13-21 (Counts I & II)).

Taite's Second Amended Complaint also generally alleges that she "filed a complaint with the EEOC in Birmingham, Alabama for intentional race discrimination and retaliation and was issued a right to sue letter." (*Id.* at ¶ 10). For purposes of proper consideration of the pending motions, additional record information about Taite's charge

of discrimination and right-to-sue letter is set forth herein. Plaintiff's Charge of Discrimination, signed on November 12, 2016, names the Monroe County Library Board of Trustees as the employer/entity that discriminated against her on account of race, retaliation, and age. (*See* Doc. 1, Attached Charge of Discrimination). In a narrative attached to the Discrimination Charge, penned by Taite on November 3, 2016, prominent mention is made of the Library. (*See id.*). Taite was advised by letter dated March 7, 2019, penned by the EEOC's District Office in Birmingham, Alabama, that the Commission had terminated its investigation of Plaintiff's employer under Title VII because "[t]he Respondent employs less than the required number of employees or is not otherwise covered by the statutes." (*Id.*). This letter identifies the employer/respondent as the Monroe County Public Library. (Doc. 1, March 3, 2019 EEOC Letter; *see also* Doc. 35, at 7 ("On March 7, 2019, the EEOC notified Taite that it was terminating its investigation of the Monroe County Public Library under Title VII of the Civil Rights Act of 1964, as amended[.] . . . The EEOC notified Plaintiff that it was terminating its Title VII investigation because the Monroe County Public Library, the respondent, 'employs less than the required number of employees or is not otherwise covered by the statutes[.]'")). Attached to this letter was the EEOC's right-to-sue letter, which again advised Taite that the EEOC was closing its file under Title VII because "[t]he Respondent employs less than the required number of employees or is not otherwise covered by the statutes." (*See id.,* Dismissal & Notice of Rights). And while it is clear that the Respondent to which reference is made in the right-to-sue letter is the same Respondent/employer set forth in the cover letter, that is, the Library, the EEOC

sent a copy of the right-to-sue letter (and, presumably, the cover letter), to Ann Pridgen, as Chairman of the Monroe County Public Library Board of Trustees. (*See id.*).

## CONCLUSIONS OF LAW

**A.** **Pleading Standard.** The sufficiency of Plaintiff's claims to proceed beyond the pleading stage, and into discovery, is governed by the plausibility standard articulated by the United States Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), and further detailed in *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). In *Twombly,* the United States Supreme Court expressly abrogated the *Conley v. Gibson,* 355 U.S. 41 (1957) "no set of facts" pleading standard, holding that test "has earned its retirement" and "is best forgotten." *Twombly*, 550 U.S. at 563, 127 S.Ct. at 1969; *Simpson v. Sanderson Farms, Inc.,* 744 F.3d 702, 714 (11th Cir. 2014) ("[T]he Supreme Court categorically retired [the no set of facts test] in *Twombly*.").

Post *Twombly,* "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . . Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1965. The Court made clear that to satisfy the requirements of Fed.R.Civ.P. 8(a) "something beyond the mere possibility [of an entitlement to relief] must be alleged, lest a plaintiff with a largely groundless claim be allowed to take up the time of a number of other people[.]" *Id.* at 557-58, 127 S.Ct. at 1966 (internal quotation marks omitted; citations omitted). "This necessarily requires that a plaintiff include factual allegations for each essential element of his or her claim." *GeorgiaCarry.Org, Inc. v. Georgia,* 687 F.3d

4

1244, 1254 (11th Cir. 2012) (citations omitted), *cert. denied,* 568 U.S. 1088, 133 S.Ct. 856, 184 L.Ed.2d 656 (2013).

The Court directed that "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Twombly,* 550 U.S. at 558, 127 S.Ct. at 1966 (internal quotations marks and ellipses omitted; citations omitted). "It is no answer to say that a claim just shy of a plausible entitlement to relief can, if groundless, be weeded out early in the discovery process[.]" *Id.* at 559, 127 S.Ct. at 1967. "[T]he threat of discovery expense will push cost-conscious defendants to settle even anemic cases…[;]it is only by taking care to require allegations that reach the level [of showing a plausible entitlement to relief] that we can hope to avoid the potentially enormous expense of discovery[.]" *Id.*

The Eleventh Circuit has likewise emphasized the importance of only allowing plausible claims to proceed beyond the pleading stage: "Federal Rules of Civil Procedure 8(a)(2) and 12(b)(6) together establish a notice-pleading standard that is applied, in a context-specific manner, with the recognition that the imposition of litigation costs must be justified at the threshold by the presence of factual allegations making relief under the governing law plausible, not merely speculative." *ABB Turbo Systems AG v. Turbousa, Inc.* 774 F.3d 979, 984 (11th Cir. 2014); *see Chudasama v. Mazda Motor Corp.,* 123 F.3d 1353, 1367 & 1367-68 (11th Cir. 1997) (recognizing that "[d]iscovery imposes several costs on the litigant from whom discovery is sought[]" and "discovery imposes burdens on the judicial system; scarce judicial resources must be diverted from other cases to resolve discovery disputes."); Fed.R.Civ.P. 1 (recognizing

that the Rules of Civil Procedure "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding.").

In *Iqbal,* the Supreme Court gave additional definition to the Rule 8(a) analysis framed in *Twombly*. The Court explained that under *Twombly*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949 (internal citations omitted). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679, 129 S.Ct. at 1950. Courts do not "'accept as true a legal conclusion couched as a factual allegation[.]'" *Id.* at 678, 129 S.Ct. at 1950 (citation omitted); *see also id.* at 678, 129 S.Ct. at 1949 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[.]").

The *Iqbal* Court made clear that "[t]he pleading standard Rule 8 announces…demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 678, 129 S.Ct. at 1949 (internal citations omitted). Consequently, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* at 679, 129

S.Ct. at 1950 (brackets and citation omitted). Therefore, dismissal of a factually insufficient complaint is required because "Rule 8…does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678-79, 129 S.Ct. at 1950.

In *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283 (11th Cir. 2010), the Eleventh Circuit Court of Appeals distilled the *Twombly/Iqbal* pleading standard into a functional "two-prong approach" for the evaluation of the sufficiency of a plaintiff's pled allegations: "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Id.* at 1290 (citation omitted). The Eleventh Circuit also explained: "Importantly, the Court held in *Iqbal*, as it had in *Twombly*, that courts may infer from the factual allegations in the complaint 'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Id.* (citation omitted).

Additionally, it is well-established that dismissal is required when the factual averments in a complaint affirmatively foreclose the existence of a plausible entitlement to relief. *See, e.g., Villarreal v. R.J. Reynolds Tobacco Co.,* 839 F.3d 958, 971 (11th Cir. 2016) ("A plaintiff nonetheless can plead himself out of court by alleging facts that foreclose a finding of diligence or extraordinary circumstances, both of which are required for equitable tolling."), *cert. denied,* ___ U.S. ___, 137 S.Ct. 2292, 198 L.Ed.2d 724 (2017); *Best Canvas Prods. & Supplies, Inc. v. Ploof Truck Lines, Inc.,* 713 F.2d 618, 621 (11th Cir. 1983) ("[A] party is bound by the admissions in his pleadings."). "[A]

plaintiff can plead himself out of court. If he alleges facts that show he isn't entitled to a judgment, he's out of luck." *Early v. Bankers Life & Cas. Co.,* 959 F.2d 75, 79 (7th Cir. 1992) (internal citations omitted).

In addition to the pled averments relevant to these Plaintiffs' claims, documents which are referenced in, or central to, the claims presented are incorporated as exhibits to the complaint, and may be considered without converting a Fed.R.Civ.P. 12(b) motion to dismiss into a Fed.R.Civ.P. 56 motion for summary judgment. *Horsley v. Feldt,* 304 F.3d 1125, 1134 (11th Cir. 2002); *see also Day v. Taylor,* 400 F.3d 1272, 1276 (11th Cir. 2005). "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed.R.Civ.P. 10(c). Therefore, in ruling on a motion to dismiss, courts consider "the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.,* 358 F.3d 840, 845 (11th Cir. 2004) (citations omitted). "Indeed, when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." *Griffin Indus., Inc. v. Irvin,* 496 F.3d 1189, 1206 (11th Cir. 2007) (citations omitted), *cert. denied,* 553 U.S. 1004, 128 S.Ct. 2055, 170 L.Ed.2d 794 (2008).

**B.    Summary Judgment Standard.**  Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) ("The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment."); *Garczynski v. Bradshaw*,

573 F.3d 1158, 1165 (11th Cir. 2009) ("[S]ummary judgment is appropriate even if '*some* alleged factual dispute' between the parties remains, so long as there is 'no *genuine* issue of *material* fact.'").

The party seeking summary judgment has the initial responsibility of informing the court of the basis for the motion and of establishing, based upon the discovery instruments outlined in Rule 56(c), that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *see also Allen v. Board of Public Educ. for Bibb Cnty*, 495 F.3d 1306, 1313 (11th Cir. 2007) ("The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial."). Once this initial demonstration is made, the "responsibility then devolves upon the non-movant to show the existence of a genuine issue . . . [of] material fact." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993); *see also Allen*, supra, at 1314 ("'When a moving party has discharged its burden, the non-moving party must then "go beyond the pleadings," and show by its own affidavits, or by "depositions, answers to interrogatories, and admissions on file," designate specific facts showing that there is a genuine issue for trial.'"); *see Comer v. City of Palm Bay, Florida*, 265 F.3d 1186, 1192 (11th Cir. 2001) ("Once the moving party discharges its initial burden of showing that there is an absence of evidence to support the non-moving party's case, the non-moving party must specify facts proving the existence of a genuine issue of material fact for trial confirmed by affidavits, '"depositions, answers to interrogatories, and admissions on file."'").

> Forbidding reliance upon pleadings precludes a party from choos[ing] to wait until trial to develop claims or defenses relevant to the summary judgment motion." . . . This effectuates the purpose of summary judgment which "'is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" . . . Thus, "mere general allegations which do not reveal detailed and precise facts" will not prevent the award of summary judgment upon a court's determination that no genuine issue for trial exists.

*Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 592 (11th Cir.), *cert. denied sub nom. Jones v. Resolution Trust Corp.*, 516 U.S. 817, 116 S.Ct. 74, 133 L.Ed.2d 33 (1995); *see also LaChance v. Duffy's Draft House, Inc.*, 146 F.3d 832, 835 (11th Cir. 1998) ("[The nonmoving party] must raise 'significant probative evidence' that would be sufficient for a jury to find for that party."). In other words, there is no genuine issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party[.]" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *see Comer, supra*, 265 F.3d at 1192 ("Summary judgment is required where the non-moving party's response to a motion is merely 'a repetition of his conclusional allegations' and is unsupported by evidence showing an issue for trial.").

In considering whether the defendants are entitled to summary judgment in this case, the Court has viewed the facts in the light most favorable to the plaintiff. *Comer, supra*, 265 F.3d at 1192 ("We view the evidence and all factual inferences raised by it in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in favor of the non-moving party.").

> The requirement to view the facts in the nonmoving party's favor extends only to "genuine" disputes over material facts. A genuine dispute requires more than "some metaphysical doubt as to the material facts." A "mere scintilla" of evidence is insufficient; the non-moving party must

produce substantial evidence in order to defeat a motion for summary judgment.

*Garczynski, supra*, 573 F.3d at 1165 (internal citations omitted).

**C.** **Analysis of the Pending Motions to Dismiss (Docs. 46 & 51).** As set forth above, Plaintiff states in a cursory manner that the Board, the Library, and MCC have violated Title VII of the Civil Rights Act of 1964, as amended, by discriminating against her on account of her race and by retaliating against her after she filed a charge of discrimination with the EEOC. (*See* Doc. 44, at ¶¶ 13-21). The sole allegation of the Second Amended Complaint that attempts to "link" MCC with the Board and the Library is her allegation that all members of the Board are appointed by the MCC. (*Id.* at ¶ 4). Otherwise, her complaint simply avers that she applied for the position of Director of the Library in September of 2016, was granted an interview by the Board, interviewed for that position on October 17, 2016, and received a rejection letter on October 28, 2016 from the Board's Chairperson Ann Pridgen. (*See id.* at ¶¶ 6 & 8). And while Plaintiff does allege that she filed a charge of discrimination with the EEOC and ultimately received a right-to-sue letter from the Commissioner (*id.* at ¶ 9), she did not supply any specifics about the charge or the right-to-sue letter (*see* Doc. 44). Other record evidence supplies those specifics and clearly establish that the entity identified as Plaintiff's employer in her charge is the Board, while the notice of right-to-sue and attached cover letter reference Taite's employer/respondent as the Library but were "copied" to the Board's Chairperson Ann Pridgen.(*See* Doc. 1, Attachments). There is no mention of MCC in any of these administrative documents. (*See id.*).

**1.** **Plaintiff's Failure to Obtain a Right-to-Sue Letter from the United States Attorney General.** MCC and the Library contend that the Plaintiff did not

exhaust her administrative remedies by obtaining a right-to-sue letter from the United States Attorney General. (*Compare* Doc. 47, at 3-4 *with* Doc. 52, at 1).

It is clearly established in this Circuit that "[w]hen a putative plaintiff wishes to sue a 'government, governmental agency, or political subdivision' under Title VII, § 706(f)(1) requires her to obtain a right-to-sue letter from the U. S. Attorney General." *Langston v. Lookout Mountain Community Services,* 775 Fed.Appx. 991, 996 (11th Cir. June 5, 2019) (citations omitted).

> This requirement is nonjurisdictional, however, and equitable waiver is available where the plaintiff "diligently attempted to obtain the required notice, but the Attorney General has refused to issue it," *Fouche [v. Jekyll Island-State Park Auth.*], 713 F.2d [1518,] 1526 [(11th Cir. 1983)], or the plaintiff " conclusively demonstrates" that the Attorney General will not issue a right-to-sue letter because the Equal Employment Opportunity Commission (EEOC) has already issued one, *Solomon [v. Harrison,*], 746 F.2d [699,] 702 [(11th Cir. 1984)].

*Id.* at 997. Here, of course, Taite received a right-to-sue letter from the EEOC but not the Attorney General. She appears to argue in response that the failure to name MCC or the Library in her EEOC charge is not a problem, based on the holding in *Virgo v. Riviera Beach Associates, Ltd.,* 30 F.3d 1350, 1358-59 (11th Cir. 1994) ("Ordinarily, a party not named in the EEOC charge cannot be sued in a subsequent civil action. This naming requirement serves to notify the charged party of the allegations and allows the party an opportunity to participate in conciliation and voluntarily comply with the requirements of Title VII. However, courts liberally construe this requirement. Where the purposes of the Act are fulfilled, a party unnamed in the EEOC may be subjected to the jurisdiction of federal courts.") (internal citations omitted). (*See* Doc. 56, at 4-5; Doc. 61, at 2 & 6). The undersigned finds Plaintiff's position untenable, at least with respect to MCC, because it was not just the failure to name MCC in the EEOC charge but the

failure to obtain a right-to-sue letter from the Attorney General that propels MCC's present attack on the Second Amended Complaint. In addition, *Virgo* was decided in the context of private entities, as opposed to the governmental entity context. And just as the Eleventh Circuit made clear in *Lyes, infra,* that "the 'single employer' aggregation test adapted from cases involving the NLRB, in which the employers are always private entities, is not applicable to those Title VII cases in which the employers are state and local government entities[,]" 166 F.3d at 1335, so too in this case involving governmental entities, *Langston, supra,* as opposed to *Virgo, supra,* controls the issue of from whom Plaintiff was required to obtain her right-to-sue letter. And since there can be little question but that MCC is a governmental actor and qualifies as a "government, governmental agency, or political subdivision" under § 706(f)(1), 42 U.S.C. § 2000e-5(f)(1), and Plaintiff makes no argument that she diligently sought a letter to qualify for equitable waiver under *Fouche* or *Solomon*, MCC's motion to dismiss Plaintiff's Title VII claims asserted against it should be **GRANTED**.[1]

The undersigned, however, is **DISINCLINED** to recommend dismissal of Plaintiff's Second Amended Complaint in favor of the Library on this same basis (*see* Docs. 51 & 52) because the Board has not moved to dismiss on this ground—though it is just as apparent that the United States Attorney General did not issue a notice of right-to-sue as to the Board (*see* Doc. 52, at 1)—and it is clear that the EEOC considered both the Board and the Library to be the discriminating entity(ies). Nevertheless, since MCC"s motion to dismiss could be granted on this basis alone and

---

[1]     Nevertheless, given Plaintiff's reliance on *Virgo,* a published opinion, the undersigned does not rely solely on *Langston,* an unpublished decision, in granting MCC's motion to dismiss.

this entity's motion should also be granted because it cannot be regarded as Plaintiff's prospective employer, Plaintiff's Second Amended Complaint should be dismissed as to the Library (and the Board) because these two entities admittedly do not have sufficient employees to be considered an employer (or employers) under Title VII. (*Compare* Doc. 1, March 7, 2019 Cover Letter and Right-to-Sue Notice (both documents make direct or implicit reference to the Library and state that the EEOC was terminating its investigation because the respondent Library "employs less than the required number of employees or is not otherwise covered by the statutes[.]") *with, e.g.,* Doc. 56, at 6 (Plaintiff's backhanded admission that only by combining the Board's employees with the employees of the MCC is the 15-employee threshold for a Title VII employer met)). If the Board and the Library had more than 15 employees, of course, it would not have been necessary for Taite to sue the MCC and the EEOC would not have suspended its investigation on the basis of the employee-numerosity requirement in Title VII.

> ### 2.   <u>Whether MCC was Plaintiff's Prospective Employer Under Title VII</u>.

Title VII makes it unlawful for an "***employer***" to fail or refuse to hire any individual on account of that individual's race. 42 U.S.C. § 2000e-2(a)(1). "The term 'employer' means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person . . . ." 42 U.S.C. § 2000e(b).  In turn, the Act defines "person" to include "one or more individuals, governments, governmental agencies, [or]  political subdivisions[.]"  42 U.S.C. §

2000e(a).[2] The MCC, who admittedly has more than 15 employees and is an employer under Title VII (*see* Doc. 47, at 5), contends that one of its employees is **not** the Director of the Library and that since Plaintiff does not plausibly allege in her Second Amended Complaint that the MCC exercised operational control over the Board, all claims she asserts against the MCC should be dismissed with prejudice.

In *Lyes v. City of Riviera Beach, Florida,* 166 F.3d 1332 (1999) (en banc), the Eleventh Circuit reiterated that it accords "a liberal construction to the term 'employer' under Title VII." *Id.* at 1341 (citations omitted). To this end, courts in this Circuit "look beyond the nominal independence of an entity and ask whether two or more ostensibly separate entities should be treated as a single, integrated enterprise when determining whether a plaintiff's 'employer' comes within the coverage of Title VII." *Id.* Indeed, the Eleventh Circuit has identified the following three circumstances "in which it is appropriate to aggregate multiple entities for the purposes of counting employees." *Id.*

> First, where two ostensibly separate entities are "'highly integrated with respect to ownership and operations,'" we may count them together under Title VII. . . . This is the "single employer" or "integrated enterprise" test. Second, where two entities contract with each other for the performance of some task, and one company retains sufficient control over the terms and conditions of employment of the other company's employees, we may treat the entities as "'joint employers'" and aggregate them. . . . This is the "joint employer" test. Third, where an employer delegates sufficient control of some traditional rights over employees to a third party, we may treat the third party as an agent of the employer and aggregate the two when counting employees. This is the "agency" test.

*Id.*

---

[2]     The employee-numerosity requirement for establishing "employer" status under Title VII is not jurisdictional; it is merely an element of a plaintiff's claim for relief. *Arbaugh v. Y &H Corp.,* 546 U.S. 500, 515, 126 S.Ct. 1235, 1245, 163 L.Ed.2d 1097 (2006); *see also Fender v. Clinch County, Georgia,* 295 Fed.Appx. 957, 958 (11th Cir. Oct. 8, 2008).

The issue before the Eleventh Circuit in *Lyes* involved the "single employer" test, *id.,* and the appellate court crafted the specific test applicable to the question of whether to aggregate state and local governmental entities for Title VII purposes, after finding the traditional NLRB four-factor test not applicable to governmental entities, *see id.* at 1344.

> [W]e hold that when assessing whether multiple governmental entities are a single "employer" under Title VII, we begin with the presumption that governmental subdivisions denominated as separate and distinct under the state law should not be aggregated for purposes of Title VII. That presumption may be rebutted by evidence establishing that a governmental entity was structured with the purpose of evading the reach of federal employment discrimination law. Absent an evasive purpose, the presumption against aggregating separate public entities will control the inquiry, unless it is clearly outweighed by factors manifestly indicating that the public entities are so closely interrelated with respect to control of the fundamental aspects of the employment relationship that they should be counted together under Title VII.

*Id.* at 1345; *see also id.* at 1344 ("Several factors will guide our determination of whether the presumption in favor of the distinctness of the public entities is clearly outweighed . . . . . As we have already noted, the NLRB factors of 'interrelation of operations' and 'centralized control of labor operations,' . . . may continue to be helpful to the inquiry. Useful 'indicia of control' may be drawn from the agency context, including '"the authority to hire, transfer, promote discipline or discharge; the authority to establish work schedules or direct work assignments; [and] the obligation to pay or the duty to train the charging party."'").

For its part, the MCC argues that the issue in this case, as in *Lyes*, involves the "single employer" test and that Plaintiff has not plausibly alleged that it exercised operational control over the Board. (*See, e.g.,* Doc. 46, at 2). And while Plaintiff, too, appears to be contending that the Board and the MCC operate and function "as a single

employer and have more than 15 employees[]" (Doc. 56, at 6), she also appears to be suggesting that the issue in this case involves the "agency" test (*see id.* at 8-9 ("[I]t seems proper to consider that the . . . Board . . . and the . . . Library are agents of the Monroe County Commission for employment purposes under Title VII.")).[3] In looking at these two separate tests, the undersigned necessarily keeps in mind that the sole allegation in Plaintiff's Second Amended Complaint linking the MCC with the Board is her averment that all members of the Board are appointed by the Monroe County Commission (Doc. 44, ¶ 7).

Turning to the "single employer" test, the undersigned aligns with Magistrate Judge Katherine Nelson's decision in *Harris v. Monroe County Library Board of Trustees,* Civil Action 19-0265-CG-N, Doc. 45, particularly because that decision was adopted as the opinion of the Court on June 17, 2020, *see id.,* Doc. 48. In her decision, Judge Nelson outlined relevant Alabama statutory law establishing that the Board is a separate legal entity capable of being sued. *See id.* at 14-15.

> Alabama law provides that "[t]he county commissions of the counties of this state and municipalities, through their governing bodies, may establish and maintain or aid in establishing and maintaining free public libraries for the use of the citizens of their respective counties or municipalities[,]" Ala. Code § 11-90-1, with "[t]he government and supervision of such libraries . . . vested in a library board consisting of five members who shall be appointed by the county commission or the governing body of the municipality." Ala. Code. § 11-90-2. Such library boards "have full power and authority to: (1) Control the expenditure of all funds received or appropriated for such libraries; (2) Erect or rent buildings to cost not in excess of the funds available to it; (3) Purchase books and equipment; (4) Provide a system of library service to be made easily available to all citizens of the county or municipality through central library, branches, stations, book truck service, or other appropriate means; (5) Elect a

---

[3] Taite makes no argument that the "joint employer" test applies in this case and, therefore, the undersigned does not consider the possible applicability of this test.

librarian and other employees; and (6) Manage and control the said library
. . . ." Ala. Code § 11-90-3(a).

*Id.*  Judge Nelson found that the statues make clear that "library boards are separate

and distinct from the county commissions or municipal authorities that create them." *Id.*

at 17.

> The[] [Boards] are vested with the "full power and authority to . . . [e]lect a
> librarian and other employees[,]" and to otherwise "manage and control"
> its libraries. Ala. Code § 11-90-3(a). While a county commission is charge
> with appointing the library board, *see* Ala. Code § 11-90-1, nothing in the
> statute indicates that a commission possesses any authority to review or
> otherwise control a library board's hiring, firing, and promotion decisions.[4]
> Indeed, a  county commission does not even possess the ability to hire
> and fire library board members at will, instead appointing them for fixed
> terms of office. *See* Ala. Code § 11-90-2. Based on the foregoing Alabama
> statutes, another judge of this district previously found that a library board
> should not be considered a joint employer with the municipality that
> appointed it. *See Oaks,* 515 F.Supp. at 1035-37.

*Id.* (footnote added).  On this basis, and because Harris "failed to allege facts indicating

that MCC had any direct involvement in any of the events underlying her causes of

action[,]" Judge Nelson concluded that the Plaintiff "failed to plausibly show that MCC

and the Board are so closely interrelated with respect to control of the fundamental

aspects of Harris and the Board's employment relationship that the presumption against

aggregating those two entities for Title VII purposes is overcome." *Id.* at 18. In addition,

Judge Nelson concluded that Harris failed to show any plausible evasive intent by the

State (that is, that the State granted county commissions and municipalities the ability to

create library boards for the purpose of evading the reach of Title VII) because "the last

amendments to the statutes governing the creation and authority of library boards

---

[4]        In effect, Alabama statutory law makes clear that the Boards and the Libraries
are "one."

occurred in 1939, before Title VII was ever enacted." *Id.* n.7. As a result, Judge Nelson concluded that Harris' Title VII claims against MCC were due to be dismissed under Rule 12(b)(6). *Id.* The Court adopted Judge Nelson's decision as the opinion of the Court on June 17, 2020. *See id.,* Doc. 48.

Here, Plaintiff's sole complaint allegation linking the MCC and the Board is the allegation that all members of the Board are appointed by the MCC. (Doc. 44, at ¶ 7). However, this "fact" is nothing more than recognition of what is provided by statute in Alabama, *see* Ala. Code § 11-90-1, and as this Court in *Harris* found, "nothing in the statute indicates that a commission possesses any authority to review or otherwise control a library board's hiring, firing, and promotion decisions." *Harris, supra,* at 15. Plaintiff's Second Amended Complaint contains no allegation that the MCC took a role in reviewing the applications for Director of the Library in and around September and October of 2016 or in choosing the Librarian, by, for example, participating in the interviews and instructing that the Board send Plaintiff a rejection letter on October 28, 2016. Accordingly, the undersigned recommends that the Court find that Plaintiff has not plausibly alleged that the MCC exercised operational control over the Board as it relates to traditional rights of employees such that the MCC and the Board (and, indeed, even the Library, whose employees are employees of the Board) should be treated as a single employer.[5]

Based on Plaintiff's response in opposition (*compare* Doc. 56, at 7-9 *with* Doc. 61, at 9-10), the undersigned considers whether the third possibility for aggregation, as

---

[5]     For the same reasons outlined in *Harris, supra,* Taite has not plausibly alleged or shown evasive intent by the State.

set forth in *Lyes,* exists in this case. The third possibility for aggregation exists where an employer delegates sufficient control over some traditional rights over employees to a third party, which may be treated as an agent of the employer when counting employees to meet Title VII's 15-employee requirement. *See Lyes, supra,* 166 F.3d at 1335. Here, Plaintiff's Second Amended Complaint contains no allegations even remotely suggesting that the Board gave MCC[6] sufficient control of her traditional employee rights, namely, the right to hire her. To the contrary, the only complaint allegation is that the MCC appoints the five-member Board; there are no allegations that the Board gave anything to MCC when it came to Plaintiff's possible employment. Indeed, the Second Amended Complaint contains no allegations that the MCC reviewed applications for the advertised open position of Director of the Library (that is, the Librarian), participated in the interviews, participated in the hiring decision, and/or informed Taite of her rejection. (*See* Doc. 44). Thus, Taite has not alleged delegation by the Board to the MCC of sufficient control of some traditional rights over employees sufficient to aggregate these two government entities as one under *Lyes'* "agency test."

The undersigned therefore **RECOMMENDS** that Plaintiff's Title VII claims asserted against MCC in Counts 1 and 2 of the Second Amended Complaint be dismissed in accordance with Rule 12(b)(6).

3.    <u>**The Library**</u>.  With this conclusion regarding the MCC, and because the Library and the Board (separately and in combination) did not and do not employ the

---

[6]    This is the only manner in which to approach this test because it was Taite who identified the Board in her Charge of Discrimination as her prospective employer, that is, the entity from whom she was seeking employment. Plaintiff cannot now turn this test on its head by staking the position that the Board and the Library are "agents" of the MCC, an entity she did not once mention to the EEOC.

minimum number of employees (15) for Title VII coverage (*compare, e.g.,* Doc. 1,

Charge of Discrimination (naming the Board as her prospective employer) *with id.,*

March 7, 2019 Cover Letter and Notice of Rights (identifying the Library as the

discriminating entity and advising that the EEOC was closing its investigation because

the Library "employs less than the required number of employees or is not otherwise

covered by the statute," but serving the notice of right-to-sue on the Board through its

Chairperson Ann Pridgen)),[7] *see* 42 U.S.C. § 2000e(b),[8] Plaintiff's Title VII claims

against the Library in Counts 1 and 2 of the Second Amended Complaint also should be

dismissed in accordance with Rule 12(b)(6).

**D.** **Analysis of Pending Motion for Summary Judgment (Doc. 53) and the**

**Competing Motions to Strike Declarations (Docs. 64 & 68**). The Board has filed a

motion for summary judgment on the basis that it lacks the requisite number of

employees to be an employer as defined by Title VII. (Docs. 53-54). In support of its

motion, the Board attached the Declaration of Shannon Powell. (Doc. 54, Declaration of

Shannon Powell). In response, Plaintiff moves to strike Powell's declaration (Doc. 64).

In addition, Plaintiff has supplied the Declaration of Mary A. Harris (Doc. 63,

Declaration), which the Board moves to strike (Doc. 67). And while the undersigned is of

the opinion that the Board is entitled to a dismissal of the Title VII claims Taite asserts

against it, as surely as is the Library, because singly, and in combination, they do not

meet the numerosity requirement for Title VII purposes and their numbers cannot be

---

[7] Indeed, Alabama statutory law makes it clear that the Librarian and all other employees of the Library are employees of the Board.

[8] Because the MCC is "out," there is simply no basis for this Court to keep the Library and the Board "in."

aggregated with those of the MCC, the undersigned nonetheless briefly considers the competing declarations to determine whether either declaration remains to support or defend against the Board's motion for summary judgment.

1.      **Declarations of Shannon Powell and Mary A. Harris**.  In support of its motion for summary judgment, the Board has attached the Declaration of Shannon Powell, who states she has personal knowledge of the declarations set forth and after enumerating them, she declares under penalty of perjury that "the foregoing is true and correct." (Doc. 54, Declaration of Shannon Powell). Powell's pertinent declarations are as follows:

> 2)      I have served on the Monroe County Public Library Board of Trustees since April, 2016.

> 3)      At all times pertinent to the claims in this lawsuit, there were (sic) only one employee at the library—the librarian (Mary Harris) who was employed and paid by the Monroe County Public Library Board of Trustees. That same body also paid a clerk [(]William Johnson), a bookkeeper (Diann Daniels), and a third gentleman (Rochester Harris) to clean the premises and do yard work as needed, though they were contract workers only. There were no other employees.

> 4)      There are five members of the Board of Trustees. . . .

(*Id.*). In support of her response in opposition to the Board's motion for summary judgment, Taite has filed the Declaration of Mary A. Harris, who also states she has personal knowledge of the declarations set forth and after setting forth those declarations, she too declares under penalty of perjury "that the foregoing is true and correct." (Doc. 63, Declaration of Mary A. Harris, at 1-2). Harris' pertinent declarations are the following:

> 2.      During the course of my 38-year employment, it was my ***belief*** that the Monroe County Public Library and the Monroe County

Public Library Board of Trustees were an Agency of the Monroe County Commission, which together has more than 15 employees.

3.      James Steven Stacey was also a library board member and employee and he received payment because I signed his timesheets until Gwendolyn D. Richardson, CCA---Chief Administrator in the Monroe County Commission office told me to stop signing his timesheets.

4.      I served as the interim librarian at the Monroe County Public Library, never as the official librarian and I currently have a civil lawsuit against the entity for wrongful termination, retaliation, and defamation, e.g., slander and libel against James Steven Stacey.

(*Id.* (emphasis supplied)) .

Plaintiff seeks to strike Powell's declaration on the following bases: (1) it is not authenticated nor signed under penalty of perjury; and (2) it contains inadmissible hearsay. (*See* Doc. 64). Taite nowhere identifies in her motion to strike what portion or portions of Powell's declaration contains inadmissible hearsay. The Board, on the other hand, seeks to strike Harris' declaration due to its failure to meet the requirements of Rule 56(c)(4) and because it is premised on an inadmissible conclusion of law and based on her "belief" in contravention of Rules 701 and 702 of the Federal Rules of Evidence. (Doc. 68). While the Board presents its motion as seeking to strike the entire declaration of Harris, the undersigned finds that the motion confines itself to that portion of the declaration set forth in the second paragraph above related to Ms. Harris' "'***belief*** that the . . . Library and the . . . Board of Trustees were an Agency of the Monroe County Commission[] . . . .'" (*Id.* at 1-2).

Rule 56(c)(4) provides that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." *Id.* Additionally, a lay witness may offer an opinion if it is "'rationally

based on the witness's perception.'" *Riley v. University of Alabama Health Services Foundation, P.C.,* 990 F.Supp.2d 1177, 1186 (N.D. Ala. 2014), quoting Fed.R.Evid. 701.

> Rule 701's requirement that the opinion be rationally based on the perception of the witness demands more than that the witness have perceived something firsthand; rather it requires that the witness's perception provide a truly rational basis for his or her opinion. . . . The nature and extent of the contacts and the observations of the witness should be as detailed as possible, but it must be recognized that an adequate foundation for opinion testimony by a layman is established when the testimony discloses that the witness through contacts with the subject had a reasonable opportunity to form an opinion. . . .

> An opinion is admissible only if the court determines that an adequate foundation has been established. . . . The district court determines, under Rule 104(b), whether an adequate foundation has been established to support a finding of rational perception. The court also determines, under Rule 104(a), whether the proffered opinion is based on personal knowledge and will be helpful to the jury.

*Id.* at 1186-87, quoting *KW Plastics v. U.S. Can Co.,* 131 F.Supp.2d 1265-1273-74 (M.D. Ala. 2001). However, "[a] party's mere 'belief' and/or speculation is not based on personal knowledge and is not competent summary judgment evidence." *Id.* at 1187 (citation omitted); *see also Pace v. Capobianco,* 283 F.3d 1275, 1279 (11th Cir. 2002) ("[A] statement that the affiant believes something is not in accordance with the Rule."); *see Rager v. Malone,* 2017 WL 11495238, *1 (N.D. Fla. June 29, 2017) ("[A]n affidavit stating only that the affiant 'believes' a certain fact exists is insufficient to support or defeat summary judgment."). "Pursuant to 28 U.S.C. § 1746, for purposes of summary judgment, an unsworn declaration may be given the same force and effect as an affidavit if it is signed and dated and includes language in substantially the following form, '"I declare (or certify, verify, or state) under penalty of perjury . . . that the foregoing is true and correct. Executed on (date). (Signature).""" *Tishcon Corp. v. Soundview Communications, Inc.,* 2005 WL 6038743, *3 (N.D. Ga. Feb. 15, 2005).

Turning to the two declarations offered in this case, it is clear that both include language substantially in the form set forth as acceptable in *Tishcon Corp., supra.* Shannon Powell's declaration contains the following language: "I declare under penalty of perjury that the foregoing is true and correct." (Doc. 54, Declaration of Shannon Powell). Following this language is the date she executed the declaration and her signature. Accordingly, Plaintiff has no basis to argue that the declaration was not signed under penalty of perjury, because it was. Moreover, the declaration is self-authenticating because the declarant specifically states she has personal knowledge of the declarations made therein. And those declarations/statements of fact, as reflected above, do not go "beyond" knowledge that Powell would have gained as a member of the Monroe County Public Library Board of Trustees, without the need for review of any records. Accordingly, Plaintiff's authentication/penalty of perjury objections to Powell's declaration should be **OVERRULED**.

Plaintiff also contends that Powell's declaration should be stricken because it contains inadmissible hearsay; however, Ms. Taite does not identify the purported hearsay contained in the declaration. (*See* Doc. 64). The undersigned has reviewed the statements of fact made by Powell in her declaration and cannot find that any are based on inadmissible hearsay. All of Powell's declarations/statements of fact are based on the personal knowledge that she has gained, again, as a member of the Monroe County Public Library Board of Trustees. Therefore, the undersigned recommends that the Court **DENY** Plaintiff's motion to strike the declaration of Shannon Powell (Doc. 64) because Powell's declaration is based upon personal knowledge of the facts set forth therein; the declaration sets out facts that would be admissible in evidence; and the

declaration demonstrates the declarant's competence to testify as to matters described therein.

Turning to the declaration of Mary A. Harris, the undersigned does recommend that the Board's motion to strike (Doc. 68) be **GRANTED** to the extent it seeks to strike that portion of Harris' affidavit regarding her "***belief*** that the Monroe County Public Library and the Monroe County Public Library Board of Trustees were an Agency of the Monroe County Commission[.]" (*Compare id. with* Doc. 63, Declaration of Mary A. Harris). The caselaw in this Circuit is clear that a belief is not equivalent to knowledge. *Compare Pace, supra,* 263 F.3d at 1279 *with Riley, supra,* 990 F.Supp.2d at 1187. Therefore, this portion of Harris' declaration should be **STRICKEN**.

　　　　**2.** 　　**The Board's Basis for Seeking Summary Judgment**. The Board seeks summary judgment on the basis that it lacks the requisite number of employees to be an employer under Title VII. (*Compare* Doc. 53 *with* Docs. 54 & 69). The undersigned will not again go through the analysis previously set forth which establishes that MCC's motion to dismiss is due to be granted because Plaintiff has not plausibly alleged a basis for aggregating the employees of MCC with those of the Board (which employs all individuals working for/at the Library).[9] It is sufficient to observe that even Plaintiff's own evidence—including the right-to-sue letter and Harris' declaration—establishes that only by aggregating employees of MCC with employees of the Board (and Library) is the employee-numerosity requirement for establishing "employer" status under Title VII met. In other words, this Court does not have to consider the contents of Powell's declaration

---

[9]　　　　For the same reasons, Plaintiff has not plausibly alleged that the Board (which includes the Library) is an employer under Title VII.

to know that the Board and the Library do not have enough employees combined to satisfy the employee-numerosity requirement for establishing "employer" status under Title VII because this ultimate fact pervades the contents of all of Plaintiff's responses in opposition (*see* Docs. 56-57 & 61-62) as well as the pertinent EEOC documents referenced above.[10]  Therefore, regardless of whether the Court treats the Board's motion as one for summary judgment or as simply seeking dismissal of Plaintiff's Title VII claims in her Second Amended Complaint, the motion (Doc. 53) should be **GRANTED** because the Board is not an employer under Title VII—again, it does not and did not have a sufficient number of employees to meet the statutory definition of employer—and, for the reasons previously articulated, Plaintiff has not plausibly alleged a basis for aggregating the Board's employees (which, as aforesaid, includes those of the Library) with those of the MCC. Plaintiff's Title VII claims against the Board cannot proceed, whether under Fed.R.Civ.P. 12(b)(6) or Fed.R.Civ.P. 56.

## CONCLUSION

It is **RECOMMENDED** that the Defendants' motions to dismiss Plaintiff's Second Amended Complaint (Docs. 46 & 51) or for summary judgment (Doc. 53) be **GRANTED** for the reasons previously articulated.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P.

---

[10]     This is so because, otherwise, Plaintiff would not have to sue the MCC.

72(b); S.D.ALA. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 19th day of June, 2020.

s/P. Bradley Murray
**UNITED STATES MAGISTRATE JUDGE**